UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PALM BEACH COUNTY

TRACEY SAMUELS

     Plaintiff,

v.

SUPPORTIVE HEALTHCARE, INC.,
TRANSFORMATIONS TREATMENT CENTER, INC.,
INTEGRITY WAY, INC.,
PINNACLE TESTING, INC., and
SUMMIT DETOX, INC.

     Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, TRACEY SAMUELS, by and through her undersigned counsel, sues the Defendants, SUPPORTIVE HEALTHCARE, INC., TRANSFORMATIONS TREATMENT CENTER, INC., INTEGRITY WAY, INC., PINNACLE TESTING, INC., and SUMMIT DETOX, INC., and alleges as follows:

## JURISDICTION AND VENUE

1.     This is an action for damages and to remedy violations of the rights of MS. SAMUELS under the Americans with Disabilities Act of 1990, as amended, including the ADA Amendment Act of 2008 ("ADA"), the Florida Civil Rights Act of 1992, as amended ("Chapter 760" or "FCRA"), and the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, et seq to redress injuries done to her by the Defendants, SUPPORTIVE HEALTHCARE, INC., TRANSFORMATIONS TREATMENT CENTER, INC., INTEGRITY WAY, INC., PINNACLE TESTING, INC., and SUMMIT DETOX, INC.

1

2.      The unlawful acts which gave rise to this Complaint occurred within Palm Beach County, Florida during the Plaintiff's employment with Defendants, making venue proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

3.      At all times material hereto, Plaintiff has been a citizen and resident of Palm Beach County, Florida and is otherwise *sui juris*.

4.      At the relevant time, Plaintiff was a disabled woman, and, as such, Plaintiff is a member of a protected class under the ADA and Chapter 760 because the terms, conditions, and privileges of her employment were altered because of her disability.

5.      At all times material hereto, Plaintiff was an individual who had rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601.

6.      Defendants are not government agencies. At all times material hereto, Defendants were Plaintiff's employer as defined by law.

7.      Defendants have, at all times material hereto, employed 20 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with the ADA and FCRA (42 U.S.C. §2000e(b); Fla. Stat. § 760.02(7)).

8.      At all times material hereto, Defendants were a covered employer within the meaning and contemplation of the FMLA, 29 U.S.C. §2611(4)(A), in that they employed more than 50 employees within a 75-mile radius in each calendar year.

9.      Plaintiff was qualified for FMLA leave in that she had worked more than 1250 hours for Defendants in a twelve (12) month period immediately preceding her application for FMLA leave.

10.     Plaintiff has exhausted her administrative remedies by filing a timely charge of discrimination against the Defendants with the Equal Employment Opportunity Commission, which was dually filed with the Florida Commission on Human Relations.

11.     Plaintiff's charge was filed within 300 days after the first instance of discrimination occurred.

12.     Plaintiff was issued a Notice of Right to Sue on November 19, 2021. This suit is filed in accordance with that Notice and within the applicable ninety (90) day limitation (a copy of the Notice is attached hereto as Exhibit "A").

13.     The Florida Commission on Human Relations did not issue a finding on Plaintiff's charge within 180 days of the filing of said charge.

## **<u>GENERAL ALLEGATIONS COMMON TO ALL COUNTS</u>**

14.     Defendants hired Plaintiff on March 24, 2014 as the Manager of Human Resources. In September 2014, the Defendants promoted the Plaintiff to the Director of Human Resources. Plaintiff served as the Director of Human Resources for Defendant Supportive Healthcare, Inc. as well as all other Defendants, which were Supportive Healthcare Inc's support companies.

15.     As the Director of Human Resources, Plaintiff's primary duties and responsibilities included recruiting, hiring, onboarding, training, and management.

16.     Plaintiff was qualified for her position as the Director of Human Resources based on her experience and training.

17.     The Plaintiff has a disability. She was diagnosed with clinical depression and anxiety. Despite the Plaintiff's disability, her performance was exemplary, as was evident from her promotion and positive reviews.

18.     On January 27, 2020, the Plaintiff texted Mr. Matt Hirsch, President, letting him know that her kids were sick and she would not be in the office but would be available by phone. Both of the Plaintiff's children had fevers and she kept them home from school. As the day passed, the Plaintiff began to feel the same symptoms as her children.  The Plaintiff texted Mr. Hirsch again and let him know she was also sick. Mr. Hirsch said he understood and hoped she felt better.

19.     On January 28, 2020, the Plaintiff let Mr. Hirsch know that they were still sick and that she wouldn't be in the office, but she would process payroll from home.

20.     On January 29, 2020, the Plaintiff let Mr. Hirsch know that she was going to the doctor that day and would let him know how she was doing. The Plaintiff continued to complete work from home that day and the next. That night, the Plaintiff submitted a note from her doctor excusing her from work through February 7, 2020. Mr. Hirsch said okay and asked the Plaintiff to please stay in touch.

21.     On Wednesday, February 5, 2020, the Plaintiff emailed Mr. Hirsch, Ms. Lisa Fluxman, Chief Marketing Officer, and the other employees in Human Resources, letting them know that she needed to take FMLA leave and her doctor was estimating 6-8 weeks. At that point, the Plaintiff's depression and anxiety had gotten extremely bad and she was seeing a therapist twice per week. The Plaintiff did not receive a response.

22.     The next day, the Plaintiff followed up with a text to both Mr. Hirsch and Ms. Fluxman. The Plaintiff received a text from Mr. Hirsch saying he was busy and would reach out to her later. At 5:00 pm that same day, the Plaintiff received an email from Mr. Hirsch telling her that he was off the next day and that he would reach out to her the following week.

23.     On Sunday, February 9, 2020, the Plaintiff emailed Mr. Hirsch, Ms. Fluxman, and Human Resources and informed them she would be submitting her provider certification.  The

Plaintiff informed them that the FMLA leave was due to mental health reasons, but the Defendants never responded.

24.     On Tuesday, February 11, 2020, the Defendants disabled the Plaintiff's access to her email and, after Plaintiff inquired as to why her email access had been disabled, Mr. Hirsch requested a call with the Plaintiff for the next day.  This was the first time Mr. Hirsch contacted the Plaintiff since she requested leave due to her disability.

25.     On February 12, 2020, Mr. Hirsch and Ms. Fluxman called the Plaintiff and asked her what was going on. The Plaintiff told them that she was suffering from extreme depression and debilitating anxiety. They asked what the Plaintiff's intentions were and she responded that she was currently receiving treatment and planned to get better during her FMLA leave and that she would return to work. Suddenly, Mr. Hirsch informed the Plaintiff that she was facing disciplinary action for an incident that happened on January 24, 2020.  On January 24, 2020, the Plaintiff met with Mr. Hirsch and Ms. Fluxman to discuss an incident that occurred on January 21, 2020. On January 21, 2020, Ms. Fluxman came into the Plaintiff's office to discuss an employee who requested FMLA leave due to a back injury. Ms. Fluxman wanted Plaintiff to back date the FMLA leave paperwork but Plaintiff refused because this was against the Defendants' policy. Ms. Fluxman was frustrated, and she and Plaintiff had a heated conversation. The Plaintiff did not end up back dating the paperwork.  On January 25, 2020, the Plaintiff and Ms. Fluxman communicated via text message and resolved their disagreement.  The Plaintiff was shocked to have this incident brought up during a call that was purportedly to discuss the Plaintiff's need for FMLA leave due to her disability.  Mr. Hirsch and Ms. Fluxman told the Plaintiff that she would have to either first use all of her vacation days and then the rest of the time she needed would be unpaid FMLA leave or that she would have to resign, and they could offer her a severance. The Plaintiff asked why she

couldn't receive short term disability like Defendants' other employees eligible for FMLA per company policy. Ms. Fluxman responded that the Plaintiff would receive what other employees received.  The Plaintiff asked them to send her everything in writing. They responded that they would send the Plaintiff everything in writing

26.     On Thursday, February 13, 2020, Mr. Hirsch emailed the Plaintiff that her options were to either take FMLA leave or resign from her position and receive 8 weeks of severance pay. The Plaintiff had to reply with her decision by February 17, 2020. The email also again raised the January 24th disagreement. The Plaintiff responded on February 17th via email to Mr. Hirsch and Ms. Fluxman that she was taking FMLA leave. The Plaintiff confirmed to them that her provider certification had been emailed to Human Resources and her estimated return to work date was April 1, 2020.

27.     On Tuesday, February 18, 2020, Human Resources confirmed that they were in receipt of the Plaintiff's provider certification. The Plaintiff began receiving short term disability pay that week. The Plaintiff had no further communication with the Defendants until March 4, 2020, when she received an email from Mr. Hirsch informing her that the Defendants were terminating her employment effective that day and due to the termination, the Plaintiff's FMLA leave was "denied."

28.     Plaintiff has engaged the undersigned attorney to prosecute her claims and is entitled to recover her attorney's fees from Defendants pursuant to statute.

### COUNT I: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 ("ADA")
**(Discrimination on the Basis of Disability)**

29.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 28, inclusive, as though same were fully re-written here.

30. The ADA forbids discrimination based on disability; prohibiting discrimination in employment, public services, public accommodations, and telecommunications.

31. Plaintiff has a disability as that term is defined under the ADA, and, therefore, is a member of the protected class.

32. At all relevant and material times, Defendants failed to comply with the ADA, which states in relevant part: (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this chapter on behalf of individuals with disabilities; and (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

33. At all times relevant hereto, Defendants regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

34. At the time of the unlawful discrimination and ultimate termination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendants.

35. Plaintiff was qualified for the position.

36. Defendants are large institutions, and therefore are sophisticated employers who have actual knowledge of the requirements of the ADA, as amended.

37. The failure of Defendants to adhere to the mandates of the ADA was willful and their violations of the provisions of the ADA were willful.

38.     The Defendants failure to communicate with the Plaintiff, initially denying her request for a reasonable accommodation, failing to engage in the interactive process, and ultimately terminating her, demonstrates the Defendants lack of adherence to their policy against discrimination and failure to comply with the law on disabilities and reasonable accommodations.

39.     Because the Plaintiff had a disability, Defendants, through their employees interfered with the Plaintiff's FMLA leave and ultimately terminated the Plaintiff.

40.      Any allegedly nondiscriminatory reason for the Defendants' failure to reasonably accommodate Plaintiff and ultimately terminate her employment is a mere pretext for the actual reasons for the failure to reasonably accommodate and for Defendants' termination of Plaintiff; inter alia Plaintiff's disability.

41.     Upon information and belief, the Defendants allow non-disabled employees to use their benefits, including leave, without terminating them.

42.     As a result of Defendants violation, Plaintiff has suffered damages.

43.     As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendants, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests this Court grant Plaintiff judgment against Defendants to compensate her for past and future pecuniary losses, including back pay, front pay, lost benefits, compensatory damages, injury to her professional reputation, emotional pain and suffering for the embarrassment, anxiety, humiliation, and emotional distress caused by Defendants discriminatory treatment, and punitive damages in an amount to be determined at trial

and in accordance with the ADA; attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as this Court deems just and appropriate.

## COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
### (Discrimination on the Basis of Disability)

44.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 28, inclusive, as though same were fully re-written here, and says:

45.     The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

46.     Plaintiff has a disability as that term is defined in the FCRA, and therefore, is a member of a protected class.

47.     At all relevant and material times, Defendants failed to comply with the FCRA.

48.     At all times relevant hereto, Defendants regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

49.     At the time of the unlawful discrimination and ultimate termination, Plaintiff did perform and excel at the performance of the essential functions assigned to her by Defendants.

50.     The failure of Defendants to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

51.     Defendants, through their practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff by terminating her on account of her disability in violation of the FCRA.

52.   The Defendants failure to communicate with the Plaintiff, initially denying her request for a reasonable accommodation, and failing to engage in the interactive process, and ultimately terminating her, demonstrates the Defendants lack of adherence to their policy against discrimination and failure to comply with the law on disabilities and reasonable accommodations.

53.   Because the Plaintiff had a disability, Defendants, through their employees interfered with Plaintiff's FMLA leave and ultimately terminated the Plaintiff.

54.   Any allegedly nondiscriminatory reason for the Defendants' failure to reasonably accommodate Plaintiff and ultimately terminate her employment is a mere pretext for the actual reasons for the failure to reasonably accommodate Plaintiff; inter alia Plaintiff's disability.

55.   Upon information and belief, the Defendants allow non-disabled employees to take time off without terminating them.

56.   Defendants' actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination and termination due to her disability. Termination on the basis of disability constitutes unlawful discrimination.

57.   As a result of Defendants violation of the FCRA, Plaintiff has suffered damages.

58.   As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendants, and/or their employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests this Court grant Plaintiff judgment against Defendants to compensate her for all past and future pecuniary losses, including back pay, front pay, lost benefits, compensatory damages, injury to her professional reputation, emotional pain

and suffering for the embarrassment, anxiety, humiliation, and emotional distress caused by Defendants discriminatory treatment, and punitive damages in an amount to be determined at trial and in accordance with the FCRA; attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT III: VIOLATION OF ADA
### (Retaliation)

59.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 28, inclusive, as though same were fully re-written here.

60.     Plaintiff suffered from a disability as that term is defined under the ADA.

61.     At all times relevant hereto, Defendants regarded Plaintiff as an individual with a disability and/or an individual with a record of having a disability.

62.     Defendants are employers as that term is defined under the ADA.

63.     Plaintiff had the right to request a reasonable accommodation.

64.     When the Plaintiff engaged in the protected activity of requesting a reasonable accommodation, the Defendants retaliated against her by terminating her employment.

65.     As a result of Defendants violation, Plaintiff has suffered damages.

66.     Defendants' actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her disability.

67.     As a direct and proximate result of the intentional and discriminatory acts and practices of the Defendants, and/or its employees, Plaintiff suffered injury and continues to suffer injury including past and future loss of income and other employment benefits, emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, embarrassment, damage to her reputation, and other past and future pecuniary losses.

WHEREFORE, Plaintiff hereby requests this Court grant Plaintiff judgment against Defendants to compensate her for past and future pecuniary losses, including back pay, front pay, lost benefits, compensatory damages, injury to her professional reputation, emotional pain and suffering for the embarrassment, anxiety, humiliation, and emotional distress caused by Defendants discriminatory treatment, and punitive damages in an amount to be determined at trial and in accordance with the ADA; attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as this Court deems just and appropriate.

### COUNT IV: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
**(Retaliation)**

68.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 28 inclusive, as though same were fully re-written here.

69.     Plaintiff had the right to request a reasonable accommodation.

70.     When the Plaintiff engaged in the protected activity of requesting a reasonable accommodation, the Defendants retaliated against her by terminating her employment.

71.     As a result of Defendants actions, Plaintiff has suffered damages

72.     Defendants' actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to her disability.

73.     Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA, Chapter 760.

WHEREFORE, Plaintiff hereby requests this Court declare that Defendants termination of Plaintiff was unlawful retaliation in violation of the FCRA, grant Plaintiff judgment against Defendants to compensate her for all past and future pecuniary losses, including back pay, front pay, lost benefits, compensatory damages, injury to her professional reputation, emotional pain

12

and suffering for the embarrassment, anxiety, humiliation, and emotional distress caused by Defendants discriminatory treatment, and punitive damages in an amount to be determined at trial and in accordance with the FCRA; attorney's fees, costs, prejudgment and post judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT V: FMLA INTERFERENCE

74.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 28 as if fully set forth herein.

75.     Plaintiff had the right to request FMLA leave.

76.     The Plaintiff qualified for FMLA leave.  After approving the leave, and while Plaintiff was on FMLA leave, Defendants terminated Plaintiff's employment. Defendants interfered with Plaintiff's right to take FMLA leave by not actually allowing her to take her FMLA leave.

77.     When Defendants did not allow the Plaintiff to use FMLA leave, they interfered with Plaintiff's right to the requested leave, or its equivalent, and thus violated the FMLA.

78.     As a direct result of the Defendants' interference with Plaintiff's right to use FMLA leave, she has suffered, and will continue to suffer, a loss of wages, employment benefits, and other compensation denied or lost to her by reason of Defendants violation. Defendants' conduct was not done in good faith, and Plaintiff is therefore entitled to liquidated damages in an amount equal to her loss of wages, employment benefits, and other compensation.

79.     Plaintiff is entitled to an award of her reasonable attorney's fees and costs incurred in this action pursuant to 29 U.S.C. §2617(a)(3).

WHEREFORE, Plaintiff hereby requests this Court grant Plaintiff judgment against Defendants for her lost wages, employment benefits, and any other compensation denied or lost to

Plaintiff by reason of Defendants violation of the FMLA, liquidated damages, equitable relief as this Court deems appropriate, Plaintiff's costs, expert witness fees, and attorney's fees, prejudgment and post judgment interest, and such other and further relief as the Court deems just and appropriate.

## COUNT VI: FMLA RETALIATION

80.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 28 as if fully set forth herein

81.     Plaintiff had the right to request FMLA leave.

82.     The Plaintiff qualified for FMLA leave.

83.     The Defendants terminated Plaintiff in retaliation for taking FMLA leave.

84.     Plaintiff's termination constituted an adverse employment action.

85.     Plaintiff's action in requesting her FMLA leave was "protected activity" under the FMLA.

86.     Plaintiff's request for FMLA leave was, at a minimum, a motivating factor in Defendants' decision to terminate Plaintiff's employment.

87.     Defendants' purported reason(s), if any, for terminating Plaintiff's employment are pretextual.

88.     As a direct result of her termination, Plaintiff has suffered, and will continue to suffer a loss of wages, employment benefits, and other compensation denied or lost to her by reason of Defendants violation. Defendants' conduct was not done in good faith, and Plaintiff is therefore entitled to liquidated damages in an amount equal to her loss of wages salary, employment benefits, and other compensation.

89.     Plaintiff is entitled to an award of her reasonable attorney's fees and costs incurred in this action pursuant to 29 U.S.C. §2617(a)(3).

WHEREFORE, Plaintiff hereby requests this Court grant Plaintiff judgment against Defendants for her lost wages, employment benefits, and any other compensation denied or lost to Plaintiff by reason of Defendants violation of the FMLA, liquidated damages, equitable relief as this Court deems appropriate, Plaintiff's costs, expert witness fees, and attorney's fees, prejudgment and post judgment interest, and such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 22nd day of December, 2021

By:  /s/ *Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff